UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DEREK PAUL SMITH | * | CIVIL ACTION |
| VERSUS | * | NO. 22-4391 |
| BP EXPLORATION & PRODUCTION, INC., ET AL. | * | SECTION "J" (2) |

Related to:  12-968 BELO in MDL 2179

**REPORT AND RECOMMENDATION**

Before me is Defendants BP America Production Company and BP Exploration and Production, Inc.'s (together, "BP") Motion to Dismiss Plaintiff's First Amended Complaint.  ECF No. 18.  Plaintiff timely filed an Opposition Memorandum.  ECF No. 19.  Defendants sought leave and filed a Reply Memorandum.  ECF Nos. 20-22.  No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Considering the record, the submissions and arguments of counsel, and the applicable law, IT IS RECOMMENDED that BP's Motion to Dismiss be GRANTED, and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE for the reasons stated herein.

**I.    BACKGROUND**

BP filed a motion to dismiss Plaintiff's original complaint on December 5, 2022.  ECF No. 4.  The undersigned recommended dismissal with prejudice but with leave to amend to set forth specific facts exhibiting, *inter alia*, Plaintiff's diligence in investigating the link between his cardiovascular conditions and chemical exposure.  ECF No. 15.  The Court fully addressed the background, facts, and applicable law in that earlier Report and Recommendation ("R&R") and will not repeat them here.

Plaintiff thereafter filed an Amended Complaint, which is substantially similar to the Original Complaint.  The minor changes are:

1

1. Correction of Notice of Intent to Sue ("NOIS") submission date (¶ 11 n.5);

2. Removal of reference to Medical Class Action Complaint (¶ 37);

3. Removal of information regarding Plaintiff's use of protective clothing during clean-up work (¶ 39);

4. Addition of allegations in ¶¶ 44-51 (fraudulent concealment, equitable tolling, etc.);

5. Addition of Exhibit B, December 13, 2022 Affidavit of Plaintiff (previously attached to Plaintiff's Opposition to the first motion to dismiss).[1]

In response, BP filed a second motion to dismiss on February 2, 2023, arguing that the Amended Complaint neither remedies Plaintiff's failure to submit his NOIS by the mandatory four-year deadline nor adds new allegations that resolve the deficiency in the pleadings regarding his diligence or reflect a lack of available public information reflecting the relationship between chemical exposure and Plaintiff's alleged cardiovascular conditions. ECF No. 18-1 at 2-3. BP also asserts that the Amended Complaint fails to make credible allegations that the supposed unavailability of scientific literature prevented Plaintiff from filing suit and repeats its arguments that Plaintiff is not entitled to rely on the discovery rule, equitable tolling, or the fraudulent concealment doctrine. *Id*. at 3, 10-14, 20-23. In addition, BP raises a new argument—Plaintiff's BELO lawsuit should be dismissed because he failed to submit a compliant NOIS before filing suit, ignoring the Claims Administrator's Notices of Defect, and improperly filed suit anyway. *Id*. at 23-25. Accordingly, BP seeks dismissal of Plaintiff's claim with prejudice. *Id*. at 26.

In Opposition, Plaintiff repeats his arguments for application of the discovery rule, equitable tolling of the MSA deadline under maritime law and/or the fraudulent concealment doctrine, and deferral of a statute of limitations ruling until the summary judgment phase. ECF No. 19 at 6-25. In Reply, BP argues that Plaintiff failed to address the "independent ground for dismissal" it raised in its second motion to dismiss—Plaintiff's failure to submit a compliant NOIS

---

[1] *Compare* ECF No. 1 *with* ECF No. 16.

prior to filing suit as required by the MSA. ECF No. 22. BP otherwise repeats its arguments about the inapplicability of the discovery rule and fraudulent concealment doctrine, Plaintiff's failure to cure the identified deficiencies via specific (rather than conclusory) allegations, and the ability of the court to decide on a motion to dismiss that a complaint is untimely. *Id.*

## II. ANALYSIS

Both Plaintiff and BP appear to have cut and pasted many of the same arguments previously addressed, including discovery rule, fraudulent concealment doctrine, equitable tolling, and dismissal based on statute of limitations at the 12(b)(6) stage, none of which the court will address again here as those issues were thoroughly addressed in the prior R&R. Instead, the Court will assess each of Plaintiff's amendments for compliance with the instructions set forth in the R&R.

### A. Notice of Intent to Sue Date

Plaintiff amended his allegation to reflect the actual date on which he submitted his NOIS to the Claims Administrator. ECF No. 16 ¶11, n.5. This correction followed the court's identification of conflicting NOIS submission dates in Plaintiff's Original Complaint. *See* ECF No. 15 at 4. While the amendment of the date provides clarity, it serves no other role in the court's analysis of whether Plaintiff cured the deficiencies through the Amended Complaint.

### B. Omission of MCAC Incorporation and Safety Gear Information

Plaintiff deleted his prior incorporation by reference of the 2012 Medical Class Action Complaint ("MCAC") in Civil Action No. 12-968. ECF No. 1 ¶37, at 10. As the undersigned noted in addressing BP's first motion to dismiss, the MCAC includes allegations of the variety of health complications associated with exposure to crude oil, including ventricular fibrillation and cardiovascular damage, which allegations suggest that the link between certain cardiovascular-related conditions and chemical exposure was knowable to the public before November 2018. ECF No. 15 at 17. Plaintiff also deleted his prior allegation that, "[d]uring his Response Activities,

Plaintiff was occasionally provided with rubber soled protective boots, Tyvek suits, goggles, hard hats, and double gloves." ECF No. 1 ¶39, at 10.

While an amended complaint supersedes the original complaint unless the amended complaint specifically refers to and adopts or incorporates by reference the entire pleading,[2] the deletion of the MCAC in ¶37 and safety gear allegations in ¶39[3] do not erase these facts from Plaintiff's knowledge base. By signing the original complaint, counsel certified that, after a reasonable inquiry, to the best of his knowledge, information, and belief, the matters contained in the complaint are well-grounded in fact and warranted by existing law. FED. R. CIV. P. 11. Further, the MCAC is a public record subject to judicial notice, consideration of which does not convert this motion to dismiss into a motion for summary judgment.[4]

Further, the attempted removal of the MCAC reference smacks of gamesmanship, particularly where the goal of the omissions appears to be to hide the matter from consideration on this Rule 12 motion, despite previously attesting to its truth.[5] The R&R specifically directed Plaintiff to set forth any additional facts available to cure the identified deficiencies, not to try and erase other factual allegations to avoid dismissal.

### C. New Allegations

Despite the opportunity to amend, Plaintiff's Amended Complaint still fails to demonstrate that he exercised reasonable diligence and could not have discovered a potential link between his exposure and condition based on the available public information reflecting a link between oil spill chemical exposure and cardiovascular conditions before 2018.[6] Plaintiff added an additional set

---

[2] *Rylander v. Collin Cnty. Sheriff's Office*, No. 13-707, 2016 WL 7665866, at *2 (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), *R.&R. adopted*, 2017 WL 77428 (Jan. 9, 2017).
[3] *Compare* ECF No. 1 at 10 *with* ECF No. 16 at 10.
[4] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).
[5] *Cf. Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981) ("[W]here the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate." (citing cases).
[6] *See* II(C) at 6-7 (discussion of Denic-Roberts article).

4

of allegations in his Amended Complaint regarding the timeline of his consultation with doctors about cardiovascular conditions, the reason he first sought legal assistance from the Downs Law Group, the purported futility of pre-2021 investigation into the cause of his heart conditions, and BP's alleged fraudulent concealment of the harms of oil-spill clean-up chemicals.[7] These new allegations, however, do not appear to include any new factual information but instead simply repeat his prior conclusory allegations regarding same.

Although Plaintiff alleges that, by 2019, he suspected certain health conditions were related to the oil spill,[8] he claims that he could not have pursued a claim for his heart-related LMPCs at that time because of the unavailability of science supporting his case, rendering any investigation of the cause of his conditions futile. Contrary to that argument, however, Plaintiff alleges that, around summer of 2020, he and his wife "looked into recent medical journals [and] figured out that there was medical support linking [his] recurring heart conditions with the chemicals [he] was exposed to during the BP Oil Spill."[9] Plaintiff thus concedes that he was aware of the link between his exposure and his heart-related conditions based on available public information in Summer 2020. Despite that fact that Plaintiff had engaged counsel to represent him by 2019[10] with regard to certain medical conditions, he contends that his further investigation in 2020 would have been futile because he is "not educated at the level of a journalist or scientist."[11] Given that Plaintiff's own allegations reflect that he was already represented by the Downs Law Group at that point, which firm specializes in BP litigation, his conclusory assertions that his personal education rendered him unable to discover any potential connection between his heart condition and his BP exposure rings hollow.

---

[7] ECF No. 16 ¶¶ 44-51, at 11-15.
[8] *Id.* ¶ 45 at 12.
[9] *Id.* 16 ¶45 n.23 (citing December 13, 2022 Affidavit of Derek Paul Smith). Notably, this is a year before the 2021 article that he now relies upon to support his assertion that he could not have known of any potential link before 2021.
[10] *See* ECF Nos. 19 at 11, 16-1 ¶ 7, at 3.
[11] *Id.*

Further, despite Plaintiff's admission that he was aware of studies linking his medical conditions to oil-spill cleanup at least by 2020, he again asserts that he could not pursue a claim for his cardiovascular conditions at that time because of the unavailability of science supporting his case and the implausibility of retaining a causation expert on cardiological disease.[12]  To support that contention, Plaintiff cites the October 2021 article by Hristina Denic-Roberts, et al. as the "first directly relevant study reporting a causal connection" between his exposure and cardiovascular symptoms or disease.  *Id*.  A reading of the Denic-Roberts article, however, reveals the existence of studies demonstrating a connection between oil spill clean-up work and cardiovascular symptoms and conditions published as early as 2009.[13]  Plaintiff's Amended Complaint does not set forth factual information identifying the steps he undertook to investigate the post-2009 scientific data, including any specific inquiries to his physicians or internet searches before Summer 2020, nor does he explain how, if he could not have been aware of the link between his condition and his clean-up work until this 2021 article, he and his wife's internet search in Summer of 2020 evidenced the link between his condition and the clean-up work.

Accordingly, Plaintiff's Amended Complaint still fails to demonstrate either the unavailability of public information reflecting the relationship between chemical exposure and his alleged cardiovascular conditions or his reasonable diligence in researching that connection after being placed on notice of his condition in 2014.

D. **Addition of December 2022 Affidavit**

Plaintiff's addition of his December 13, 2022 Affidavit attached to his prior opposition[14] merely demonstrates that Plaintiff was never *told* about the Mass Settlement Agreement or the

---

[12] *Id*. at ¶ 45 n.24.
[13] Hristina Denic-Roberts, et al., *Acute and longer-term cardiovascular conditions in the Deepwater Horizon Oil Spill Coast Guard Cohort*, 158 Environmental National 106937 (2022) at 2 (citing Cheong et al., 2011; Ha et al., 2012; Campbell et al., 1993; Meo et al., 2009; Rusiecki et al., 2017); ECF No. 18-4 at 3.
[14] *See* ECF Nos. 16-2, 5-1 at 5-7.

dangers of oil-spill dispersants and reiterates his fraudulent concealment argument.[15]  It likewise fails to set forth the allegations necessary to establish Plaintiff's diligence in investigating the cause of his heart condition after being diagnosed in 2014.  In short, attaching this December 2022 affidavit does not set forth the specific, non-conclusory allegations necessary to establish sufficient diligence between 2014 and 2018 necessary to trigger the discovery rule.

### III.   CONCLUSION

Although Plaintiff was provided an opportunity to amend his complaint, he fails to set forth the necessary specific facts reflecting his diligence in investigating the potential like between his heart condition and his clean-up work.  Instead, he repeats the same factual allegations and attaches the same two affidavits previously provided, raising no new factual allegations to establish that he exercised diligence to investigate or that he did not have sufficient information "to excite inquiry" as to whether his 2014 cardiovascular medical conditions were linked to his clean-up exposure.  Although Plaintiff invokes a 2021 article as the trigger evidence, that conflicts with his own assertion that he and his wife were able to discern a potential link over a year earlier, in Summer 2020.  He fails to identify what specific information he learned in Summer of 2020, the publication date of such information, or what steps he took to locate that information between 2014 – 2018.  In light of this failure, the court need not address BP's new argument alleging that Plaintiff failed to file a compliant NOIS prior to filing suit.

The pleadings and attachments reflect that Plaintiff failed to timely investigate and pursue his claim as he does not set forth specific allegations establishing otherwise.  For these reasons, dismissal is proper.  As done in previous cases affirmed by the Fifth Circuit,[16] the BELO Case

---

[15] *Id*.
[16] *In re Deepwater Horizon*, No. 20-30673, 2021 WL 4888395 (5th Cir. Oct. 19, 2021).

Management Order should be modified insofar as it applies to this particular BELO case to permit dismissal with prejudice. Accordingly,

IT IS RECOMMENDED that the Motion to Dismiss Plaintiff's Complaint (ECF No. 18) be GRANTED, and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[17]

New Orleans, Louisiana, this __29th__ day of March, 2023.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[17] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).